CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 0 1 2007

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRISTOPHER ALLEN BOWEN, <br> Plaintiff, | Civil Action No. 7:06CV00305 |
| v. | MEMORANDUM OPINION |
| NEW RIVER VALLEY <br> REGIONAL JAIL, et al., <br> Defendants. | By: Hon. Glen E. Conrad <br> United States District Judge |

Christopher Allen Bowen, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against the New River Valley Regional Jail; two nurses at the jail, Rebecca Tatum and Margaret Falls; and the nurses' employer, Southern Health Partners.[1] The case is presently before the court on the motion for summary judgment filed by Rebecca Tatum. For the reasons that follow, the court will grant Tatum's motion.

### Factual and Procedural Background

Bowen has been incarcerated at the New River Valley Regional Jail since October of 2005. The following factual allegations are taken from Bowen's original complaint, filed on May 18, 2006, and his amended complaint, filed on June 7, 2006.

On October 6, 2005, Bowen sustained a spider bite on his left arm. At approximately 10:00 p.m., Bowen was examined by Tatum. Bowen alleges that Tatum squeezed the area surrounding the bite, and sent him back to his cell with Ibuprofen and a band-aid.

By the following morning, Bowen's left arm had swollen to more than twice its original size from his hand to his elbow. Bowen was eventually taken to the medical department, where he was

---

[1] By opinion and order entered November 15, 2006, the New River Valley Regional Jail, Margaret Falls, and Southern Health Partners were dismissed from the case.

examined again by Tatum. Tatum took Bowen's temperature and sent him back to his cell with another band-aid and Ibuprofen.

Bowen awoke the morning of October 8, 2005 with increased pain and swelling. Bowen alleges that he could hardly get out of bed, and that he was unable to eat. Bowen further alleges that because he was experiencing so much pain, he had to carry his left arm with his right arm. Bowen began the process of requesting medical assistance and was advised that a doctor would not be available until October 10, 2005. Bowen was taken to the medical department that evening, where he was examined by Tatum. Bowen alleges that Tatum took his temperature, which was "99. something," and provided the same course of treatment, Ibuprofen and a band-aid.

By the following day, Bowen was unable to get out of bed or eat his meals. He was taken to the medical department, where he was examined by Tammy Cox. After taking his temperature, which was "102 point something," Cox called the jail's physician to determine the appropriate course of treatment. The physician instructed Cox to send Bowen to Pulaski County Community Hospital.

Bowen was examined in the hospital's emergency room on the night of October 9, 2005. The emergency room physician referred Bowen to Dr. Stuart Goldstein. Dr. Goldstein's examination report indicates that Bowen suffered from a "probable spider bite with small abscess and severe cellulitis of the left arm." Goldstein admitted Bowen for the administration of intravenous antibiotics and an incision and drainage of the bite, with physical therapy to follow.

Bowen remained in the hospital for four days. Bowen alleges that during that time, a physician told him that his left arm may have required amputation if the nurses had waited another day to send him to the hospital. Bowen contends that he is still experiencing problems with his left arm as a result of the delay in receiving treatment.

2

On December 4, 2006, Tatum filed a motion for summary judgment, supported by Tatum's declaration and Bowen's medical records. In her declaration, Tatum states that she recalls examining Bowen on two occasions in early October of 2005. Tatum states that she first examined Bowen during the booking process on October 6, 2005. At that time, Bowen had "red pinpoint pinholes" on his left knee and left forearm, with redness surrounding each site. (Tatum Decl. at 1). Additionally, Bowen's left knee was swollen. Tatum avers that while Bowen also told her that his left knee was painful, he did not claim or appear to be in severe pain. Tatum cleansed Bowen's knee and forearm with hydrogen peroxide and saline, and applied a triple antibiotic ointment and a band-aid to each site. Tatum explains that "[t]he purpose of the band-aids was to prevent the sites from becoming infected with methicillin resistant Staphylococcus aureus, which was rampant in the jail's population, or some other infection illness carried in the population." (Tatum Decl. at 2). Tatum states that she also recalls giving Bowen Ibuprofen or another brand of acetaminophen for pain, and instructing him to return to the medical department if his condition worsened. Tatum also placed Bowen on the list to see the jail's physician.

Tatum alleges that she saw Bowen again on October 7, 2005. At that time, she took Bowen's temperature and tested his blood pressure. Tatum indicates that Bowen's temperature was "slightly elevated at 99.3 degrees," and that "his blood pressure was normal at 110/78." Tatum noted on Bowen's medical screening form that the redness and swelling on Bowen's left knee had greatly diminished and that his knee pain had also decreased. However, Tatum noted that the redness and pain in Bowen's left arm had increased, and that there was a minute area of clear drainage around the site on his arm. Because the condition of Bowen's left knee had improved with the treatment Tatum provided on October 6, 2005 and the passage of time, Tatum determined that the condition of Bowen's arm would also improve. Tatum washed both sites again, and applied an

3

antibiotic appointment and band-aids. Tatum states that she also recalls giving Bowen Ibuprofen or another brand of acetaminophen for his pain and fever.

Tatum avers that she did not see Bowen again before he was taken to Pulaski County Community Hospital on October 9, 2005. Tatum emphasizes that if she had examined Bowen a third time, she would have documented the examination in his medical records. However, Bowen's medical records provide no indication that he was examined by Tatum or anyone else on October 8, 2005. Instead, the records indicate that Bowen was not seen in the medical department again until October 9, 2005, when he was examined by Tammy Cox. At that time, Bowen's temperature had risen to 102 degrees, and he was later transported to the emergency room.

In her declaration, Tatum also avers that on the occasions that she treated Bowen, he did not demonstrate any signs or symptoms that, in her clinical judgment, warranted medical attention beyond that which she provided. Tatum emphasizes that "[Bowen's] temperature was not significantly elevated; he was ambulating; he could move his knee and arm; he did not complain of nausea and was not vomiting; neither his arm nor leg were significantly swollen; he did not complain of severe pain; and he did not have tremors." (Tatum Decl. at 3). Tatum also emphasizes that she advised Bowen during both examinations that he should return to the medical department if his condition worsened, and that she would have contacted the jail's physician had "any of these serious signs and symptoms developed." (Tatum Decl. at 3).

Bowen has now filed a response to Tatum's motion for summary judgment, supported by his own statement and a statement from another inmate, Chad Jones. In his statement, Bowen alleges that he "know[s] for a fact" that he was examined by Tatum on October 8, 2005, and that his arm was severely swollen. Jones also alleges that Bowen's arm was severely swollen, and that Bowen

4

suffered from a lot of pain and discomfort. Jones further alleges that Bowen "went to medical everyday he was there until he did not come back one night."

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indust., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## Discussion

In order to establish a constitutional violation for inadequate medical treatment, an inmate must show that a jail official exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). The test for deliberate indifference involves both an objective and a subjective component. The alleged deprivation must be, objectively, "sufficiently serious," and the official must know of and disregard an excessive risk to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834-837 (1994). Mere malpractice does not state a federal claim, Estelle, 429 U.S. at 105-106, nor does mere negligence in diagnosis. Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986). Likewise, questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Instead, to establish a claim for deliberate indifference, an inmate must show that the jail official was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,'" and that the

5

official "also [drew] the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 167-168 (4th Cir. 1998) (quoting Farmer, 511 U.S. at 837)).

Having reviewed the record in this case, the court agrees with Tatum that Bowen has failed to satisfy the subjective component of the test for deliberate indifference. Specifically, Bowen has produced no evidence that Tatum was aware of a substantial risk of serious harm and deliberately failed to obtain appropriate medical treatment. At most, the evidence suggests that Tatum acted negligently in diagnosing or treating the site on Bowen's left arm, neither of which is actionable under § 1983. See Estelle, 429 U.S. at 105-106; Johnson 145 F.3d at 168; Sosebee v. Murphy, 797 F.2d at 181.

Bowen's medical records indicate that Tatum only examined him on October 6 and 7, 2005 and no significant swelling or pain was noted on either occasion. However, even if Tatum also examined Bowen on October 8, 2005, as Bowen insists, and his left arm had become increasingly swollen and painful by that date, there is no evidence that Tatum knew that Bowen's symptoms signified the presence of a severe infection that required emergency medical treatment.[2] Without any evidence that Tatum actually made the connection between Bowen's symptoms and the existence of a serious medical condition, Bowen's claim against Tatum cannot survive summary judgment. See Johnson, 145 F.3d at 168 (holding that the plaintiff failed to establish a claim for deliberate indifference against two prison doctors who failed to diagnose and treat a pituitary tumor,

---

[2]To the contrary, based on her examination on October 7, 2005, Tatum believed that the condition of Bowen's left arm would improve with the treatment she provided and the passage of time, just as Bowen's left knee had improved. See Tatum Decl. at 2. While this determination may have ultimately been incorrect, any negligence or malpractice on the part of Tatum in evaluating Bowen's arm does not, by itself, support an inference of deliberate indifference. Johnson, 145 F.3d at 166.

6

where there was no evidence that the doctors "'bridged the gap' between the [plaintiff's] symptoms and the tumor itself").

## Conclusion

For the reasons stated, the court concludes that Bowen has failed to proffer sufficient evidence from which a reasonable jury could find that Tatum knew of and disregarded his serious medical condition. Thus, the court will grant Tatum's motion for summary judgment.

The Clerk is directed to send a certified copy of this opinion and the accompanying order to the plaintiff.

**ENTER**: This 1st day of ~~January~~ February, 2007.

_/s/ Judge Conrad_
United States District Judge